UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLOBE COTYARN PVT. LTD.,

                Plaintiff,

-against-

NEXT CREATIONS HOLDINGS LLC, and AAVN, INC.,

                Defendants.

**OPINION AND ORDER**

18 Civ. 04208 (ER)

Ramos, D.J.:

Globe Cotyarn Pvt. Ltd. ("Globe"), a fabric manufacturer, brings this action against a fabric patent holder, AAVN, INC., and its subsidiary, Next Creations Holdings LLC ("Next Creations"), for falsely claiming that Globe had sold infringing products. Defendants move to dismiss with prejudice. For the reasons set forth below, Defendants' motion is GRANTED without prejudice.

**I.    Background**

Globe, an Indian company, manufactures and sells textiles, including bedsheets, to U.S. importers. Doc. 5, 2. AAVN, a Texas company, owns the following textile patents: United States Patent No. 9,131,790 B2 ("790 patent"); United States Patent No. 9,481,950 B2 ("950 patent"); United States Patent No. 9,493,892 B1 ("892 patent"); and United States Patent No. 9,708,737 B2 ("737 patent"). *Id.* at 2–4. These patents concern the manufacture of Chief Value Cotton ("CVC"), a fabric composed of cotton and polyester yarns. *Id.* at 5. Very generally speaking, these patents describe a process for manufacturing high thread count cotton-polyester blend fabric. Doc. 38, 9. Next Creations, a New York company, is a wholly-owned subsidiary of AAVN. *Id.* at 2.

**A.     The Prior Challenges**

On October 1, 2015, AAVN filed a complaint in the International Trade Commission ("ITC") alleging that certain textiles being imported into the U.S. violated a portion of its 790 patent. *Id.* at 6. The ITC instituted an investigation and named fifteen respondents. Doc. 39-2, 2.[1] In those proceedings, a respondent, GHCL, defended on the basis that it had sold the allegedly infringing fabrics before AAVN had even received the patent. Doc. 5, 7. However, GHCL and AAVN settled the matter and GHCL agreed not to sell for importation products that infringe on AAVN's 790 patent. Doc. 39-5, 3.

On August 1, 2017, a company, A.Q. Textiles LLC ("AQT"), filed petitions in the United States Patent and Trademark Office to review AAVN's 892 and 950 patents. *Id.* at 10. The Trial and Appeal Board granted the petitions and, according to Globe, found that "the petitions demonstrate that more likely than not AQT will prevail in showing that at least one of the challenged claims in each of the patents is unpatentable." *Id*. A trial was instituted for each patent. Doc. 39-6, 3. AQT then filed a petition to review AAVN's 737 patent. Doc. 5*,* 11. Before the first two cases went to trial and before a trial was instituted in the third case, the parties settled the claims, and, on March 23, 2018, they filed a joint motion to terminate and dismiss the proceedings. *Id.* at 11. The Trial and Appeal Board terminated the trials in the first two proceedings and dismissed the final petition. Doc. 39-6, 5.

---

[1] Globe identifies this investigation as 337-TA-3088. Doc. 5. 6. Defendants provide a copy of the consent order for Investigation No. 337-TA-976. Doc. 39-5, 2. The ITC's website lists Investigation No. 337-TA-976 on Docket. 3088. U.S. Int'l Trade Comm'n, Section Commission Notices, 96 https://www.usitc.gov/secretary/fed_reg_notices/337.htm. Globe does not contest Defendants' assertion that 337-TA-3088 is, indeed, Investigation No. 337-TA-976. The Court presumes that Globe, in referencing 337-TA-3088, intends to reference Investigation No. 337-TA-976 on Docket. 3088.

**B.     The Instant Charges**

In the instant case, Globe alleges that Defendants contacted a number of Globe's customers and falsely accused Globe of selling infringing materials. Globe identifies the companies to whom Defendants sent the false accusations as J. Queen New York ("J. Queen"), "another Globe customer whose office and showroom are located in New York City," and "other customers of Globe." Doc. 5, 11–13.

Specifically, Globe alleges that in a letter dated April 10, 2018, John B. Walker, Jr., Next Creations' chief financial officer, wrote the President of J. Queen as follows: "I am reaching out to you today in regard to product your company sells to retailers throughout the United States that infringe upon AAVN's CVC Patent. Your company is not authorized to sell this CVC product." *Id.* at 11–12. In an email sent to a representative of J. Queen three days later, Walker further explained, "One of the infringing products was purchased from Globe Cotton out of India.[2] The product in question is 600TC CVC. I was told by my team that there are other infringement items besides this one." *Id.* at 25. While Globe acknowledges that it attempted to sell J. Queen 600TC CVC, it alleges that the product does not infringe Globe's patents, and that, in any event, J. Queen did not purchase it.

Defendants allegedly sent a similar letter to "another Globe customer whose office and showroom are located in New York City." *Id.* at 13. For the "other customers," Globe alleges that Defendants made similar statements, but does not specify the modes or dates of those communications. *Id.*

Globe claims that AAVN and Next Creations made these communications in bad faith. Specifically, Globe asserts that Defendants never inspected Globe's product or its production

---

[2] According to Globe, "Globe Cotton" actually refers to Globe Cotyarn. *Id.* at 12.

facilities and thus could not have known whether their patents were infringed. *Id.* at 15.[3] Globe alleges that it has incurred legal fees, lost sales, and suffered reputational harm. *Id.* at 14. Globe warns that allowing Defendants to make these communications would increase Defendants' market share, limit choice, and drive up prices. *Id.* at 15.

In the instant action, Globe asserts four claims against Defendants: false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); unfair competition under New York law; tortious interference with a business relationship under New York common law; and deceptive acts under the New York Consumer Protection Act.

## II. Standard

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous

---

[3] It makes this argument by noting that Defendants' patents concern, *inter alia*, the techniques used in manufacturing the cotton-polyester blend and that it was not possible for Defendants to have concluded that Globe used these techniques because they never inspected Globe's factories. Doc. 5, 14.

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**III.   Discussion**

In their briefs, the parties cite Federal Circuit, Second Circuit, and New York State law without any discussion about which law applies. The Court need not decide this choice-of-law issue because, under any of these laws, Globe's claims fail. [4]

**A.      Section 43(a)(1)(B) Lanham Act Unfair Competition**

Globe claims that Defendants, by describing Globe's product as infringing in its communications with J. Queen and unidentified others, made literally false advertisements in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Doc. 5, 15–16. This section of the Lanham Act prohibits any person from "misrepresent[ing] the nature,

---

[4] Each of these laws could apply. Globe brings federal and state law claims. It asks the Court to exercise diversity and pendent jurisdiction over its state law claims and it seeks the Court's federal question jurisdiction over its federal claim. Doc. 5, 4–5. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Similarly, "the District Court is bound to apply state law when ruling on a pendent state claim." *Rounseville v. Zahl*, 13 F.3d 625, 629 n.1 (2d Cir. 1994). Generally, in federal question cases, the Court "is bound to follow the law of the Circuit." *Ithaca Coll. v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980). However, "district courts in this circuit remain bound to follow the holdings of the Federal Circuit in cases falling within the appellate jurisdiction of the Federal Circuit." *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 174 n. 9 (2d Cir. 2012). Pursuant to the applicable statute, "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents . . . ." 28 U.S.C. § 1295(a)(1). A case arises under patent law if "federal patent law creates the cause of action" or if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 684 (2d Cir. 2009). Globe argues that Defendants' communications were improper because "Defendants knew the claims of their patents were invalid." Doc. 40, 16–17. As a result, at least a portion of Globe's complaint appears to depend on the resolution of a substantial question of federal patent law. Neither party has briefed this issue and the Court will not rule on it *sua sponte*. *Cf. Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) ("*Sua sponte* dismissals without notice and an opportunity to be heard deviate from the traditions of the adversarial system and tend to produce the very effect they seek to avoid—a waste of judicial resources—by leading to appeals and remands." (internal quotation marks and citations omitted)).

characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).

To successfully bring a claim under this provision of the Lanham Act, a party must first demonstrate that the challenged message qualifies as "commercial advertising or promotion." Commercial advertising or promotion is (1) commercial speech, as defined by the First Amendment, (2) made "for the purpose of influencing consumers to buy defendant's goods or services;" and (3) "disseminated sufficiently to the relevant purchasing public." *Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (internal quotation marks and citations omitted). Once the party has shown that the Lanham Act applies to the challenged message, it must show that the message violated the Act. To sufficiently allege a violation, a party "must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

Defendants claim that Section 43(a)(1)(B) does not apply to the challenged messages because the messages do not qualify as commercial advertising or promotion. Doc. 38, 19–20. Specifically, they argue that Globe has not shown, as required by the test's third prong, that the messages were sufficiently disseminated to the relevant purchasing public. The Court agrees.

"Businesses harmed by isolated disparaging statements do not have redress under the Lanham Act." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). The Second Circuit has not established the exact number or percentage of customers that must be exposed to the challenged message for the message to qualify as sufficiently disseminated. It has, however, provided some guidance. In *Fashion Boutique*, for example, it observed that defendant's sales associates made, in defendant's store, "a total of twenty-seven

oral statements regarding plaintiff's products in a marketplace of thousands of customers" and held that "[s]uch evidence is insufficient to satisfy the requirement that representations be disseminated widely in order to constitute 'commercial advertising or promotion' under the Lanham Act." 314 F.3d at 58.

Courts within this District have come to similar conclusions in cases alleging violations of Section 43(a)(1)(B). In *Professional Sound Servs., Inc. v. Guzzi*, the court held, "Dissemination of a statement to one customer out of 36 simply does not meet this standard." 349 F. Supp. 2d 722, 729 (S.D.N.Y. 2004). Similarly, in *Chamilia, LLC v. Pandora Jewelry*, the court held "six statements, most directed at a single individual," were not sufficiently disseminated to qualify as commercial advertising or promotion, "[e]ven if the relevant market, jewelry retailers, is in fact . . . smaller than that for the handbags in *Fashion Boutique*." No. 04 Civ. 6017 (KMK), 2007 WL 2781246, at *9 (S.D.N.Y. Sept. 24, 2007). Finally, in *In re Elysium Health-Chromadex Litig.*, the court held that "one email between a company representative and a single consumer does not constitute 'advertising and promotion' within the meaning of the Lanham Act." No. 17 Civ. 7394 (CM), 2018 WL 4907590, at *9 (S.D.N.Y. Sept. 27, 2018). *See also Solmetex, LLC v. Dental Recycling of N. Am., Inc.*, No. 17 Civ. 860 (JSR), 2017 WL 2840282, at *3 (S.D.N.Y. June 26, 2017) (finding that the allegation that a company's representative made a single statement to a single customer did "not support the inference that [the company] conducted a wide-reaching false advertising campaign disseminated to the wider purchasing public").

The Court finds *Fashion Boutique* and its progeny applicable. Those cases stand for the proposition that a Lanham Act violation for false commercial advertising or promotion cannot lie where the allegedly offending message is not sufficiently disseminated to the relevant purchasing

7

public.  Here, Globe has not identified the size of the relevant purchasing public.  It has, however, alleged that Defendants sent two messages to a single customer and a third message to another unnamed customer.  Doc. 5, 13.  Globe also alleges that Defendants sent similar messages to other customers, but those allegations do not provide the number or names of the recipients, the dates of the correspondence, or the modes of the communications.  *Id.*

Under the standards set by *Fashion Boutique*, three messages sent to two customers in a marketplace of an unidentified size are not sufficiently disseminated to the relevant purchasing public to fall within the Lanham Act's coverage.  Globe's "naked assertion" about messages sent to other customers, "without some further factual enhancement[,] stops short of the line between possibility and plausibility of entitle[ment] to relief."  *Twombly*, 550 U.S. at 557 (internal quotation marks and citation omitted).  *See also Solmetex, LLC*, 2017 WL 2840282, at *3 (finding allegations of widespread dissemination conclusory when they were made without detail and "solely upon information and belief").

Of the cases referenced in the preceeding paragraphs, Globe only attempts to distinguish *Fashion Boutique* and *Chamilia*.  It argues that *Fashion Boutique* is distinguishable because unlike here, the statements in that case were made by less senior employees.  Doc. 40, 18.  It claims that *Chamilia* is distinguishable because, in that case, defendants made the challenged comments privately.  *Id.* at 19.

Neither argument is persuasive.  Whether sent by sales associates, as was the case in *Fashion Boutique*, or a chief financial officer, as is the case here, the key question is the scope of dissemination.  To the same extent, the Court does not find the phone calls, letters, and tradeshow comments in *Chamilia* to be any more or less public than the email and letters—which were sent to particular individuals—at issue here.  2007 WL 2781246, at *6.

8

In addition to attempting to distinguish the cases cited above, Globe claims that "sending even a single letter to a customer to mislead that customer and affect that customer's purchasing decision to another's detriment is sufficient to show public dissemination." Doc. 40, 17. To substantiate this point, it cites a Southern District case that precedes *Fashion Boutique*, and a district court case from another circuit. Those cases are easily distinguishable.

In the first case, *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, the district court found that a letter to a single customer satisfied the Lanham Act's dissemination requirement. 880 F. Supp. 1005, 1020–21 (S.D.N.Y. 1994). However, and critical here, the district court so concluded because it also found that "the true relevant purchasing public consisted solely of" of that one customer. *Id.* Similarly, in the second case, *The Hillman Grp., Inc. v. Minute Key Inc*, the Southern District of Ohio held that statements to a single customer can trigger the protections of the Lanham Act "if the market at issue is very small and discrete." 317 F. Supp. 3d 961, 979 (S.D. Ohio 2018). Here, because Globe has not described the size of the relevant market, let alone shown that it is very small and discrete, that case provides no persuasive force. Because Globe has not shown that the three challenged statements were disseminated sufficiently to the relevant purchasing public, the Court finds that Section 43(a) of the Lanham Act does not apply.

The Court would come to the same conclusion if the Federal Circuit's law controlled this case. Under Federal Circuit law, "[t]o prevail on an unfair-competition claim under section 43(a) of the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith." *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008). *See also Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008) (following the Federal Circuit). To demonstrate

9

bad faith under the Federal Circuit's case law, a plaintiff must prove two elements. First, the plaintiff must show that the claims were "objectively baseless, meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Judkins*, 529 F.3d at 1338 (internal quotation marks and citations omitted). Second, "once the court concludes that the claims of infringement are objectively baseless, the court must then consider whether the claims were made in subjective bad faith." *Id.* at 1339.

Globe does not rely on this standard to argue that Defendants' claims of patent infringement were made in bad faith. Instead, Globe argues that Defendants acted in bad faith in two other ways. First, Globe asserts that Defendants claimed infringement without knowing how the allegedly infringing product was made. Doc. 40, 14. Second, Globe argues that Defendants asserted a patent that they knew was invalid. Doc. 40, 15.

Neither argument establishes bad faith. The first argument lacks merit because, as Defendants point out, the Federal Circuit has already rejected an analogous line of reasoning in *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1255 (Fed. Cir. 2008). In that case, one company sued another company under the Lanham Act for making false and misleading infringement allegations. *Id.* at 1258. To support its claim that the defendant had acted in bad faith, plaintiff alleged that there was "no indication that [the defendant] tested [plaintiff's] products, construed the claims of any of [the] patents, or considered an earlier analysis of certain [plaintiff's] products suggesting that infringement was an open question." *Id.* at 1263. The Federal Circuit held that these "contentions might be probative of subjective baselessness, but they do not help to show that a jury reasonably could find that [plaintiff] could meet its burden of proving by clear and convincing evidence that [defendant's] infringement allegations were objectively baseless." *Id.* at 1263–64. So too here, while Globe alleges that

10

Defendants lack information as to whether Globe's production process infringed their patents, such an argument goes to subjective baselessness only.

The second argument stumbles on the facts. Globe claims that a portion of at least one of Defendants' patents is invalid because a party challenged its validity. The parties, however, settled that case and Globe has not alleged that any other proceeding invalidated any of Defendants' patents. Doc. 5, 11. While it has been challenged, Defendants still have a presumably valid patent and therefore Defendants' letters do not evidence bad faith. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("The law recognizes a presumption that the assertion of a duly granted patent is made in good faith.").

**B.     State Law Claims**

Globe also brings state law claims against Defendants for unfair competition, tortious interference, and deceptive acts. Under the Federal Circuit's law, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1320 (Fed. Cir. 2006). Thus, Globe's claims may be dismissed on this basis alone. However, even if New York State law applied to these claims, the Court would still dismiss them.

**1.     Unfair Competition**

New York's general unfair competition law closely resembles Section 43(a)(1)(B) of the Lanham Act. "Both a section 43(a)(1)(B) claim under the Lanham Act and an unfair competition claim under New York common law require that misleading or untruthful statements have been made for the purpose of commercial advertising or promoting a party's goods, services, or commercial activities." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d

11

Cir. 2000). Because Globe has not alleged sufficient facts to establish that Defendants made the challenged statements in connection with commercial advertising or promotion, Globe's common law unfair competition claim fails for the same reason as its Lanham Act claim.[5]

In its brief, Globe references an unfair competition claim for disparagement but it does not actually make this claim. Doc. 40, 20. In any event, "[t]o recover for disparagement of goods, the plaintiff must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages." *Fashion Boutique*, 314 F.3d at 59. Furthermore, "[w]here loss of customers constitutes the alleged special damages, the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized." *Id.* (internal quotation marks and citation omitted). Here, Globe does not claim that it lost any customers. While it has named J. Queen, it implicitly acknowledges that it did not suffer any damages with respect to that customer because it admits that J. Queen did not agree to purchase its allegedly infringing product. As a result, to the extent that Globe brings a disparagement claim, this claim also lacks merit.

**2.** **Tortious Interference**

Under New York law, a plaintiff alleging tortious interference with a business relation must show: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel*, 208

---

[5] Section 43(a) of the Lanham Act and unfair competition under New York common law differ in at least one important respect: Unlike for the general interpretation of Section 43(a) of the Lanham Act, "[a] plaintiff claiming unfair competition under New York law must show that the defendant acted in bad faith." *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005). As explained above, Globe has not alleged sufficient facts to establish bad faith.

F.3d at 382. Globe's claim fails on the first prong. As the Second Circuit has held, a plaintiff does not sufficiently allege a business relation with a third party where "the complaint fail[ed] entirely to describe any third party with whom [p]laintiff] had prospective business relations to be interfered with." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010). Similarly, in *Nadel*, the Second Circuit concluded that a single meeting between two parties, where "no specific details were discussed," did not establish a business relation for the purpose of New York's tortious interference law. 208 F.3d at 383.

Globe has not fulfilled the first prong because it has only made conclusory assertions of business relations by describing J. Queen and the unnamed parties as "customers," without providing any specific factual enhancement, such as information about past sales, contracts, meetings, or communications. Doc. 38, 21. Indeed, it has not alleged a single sale, communication, or meeting, like the one found insufficient in *Nadel*, 208 F.3d at 383, with any party.

The claim also fails on the third prong. In *Lombard v. Booz-Allen & Hamilton, Inc.*, the Circuit Court held, "[w]rongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure. More than simple persuasion is required." 280 F.3d 209, 214–15 (2d Cir. 2002). Defendants assert that Globe has not satisfied the third prong because it has not alleged any improper purpose or wrongful means. Doc. 38, 21–22. Globe asserts that Defendants employed improper means by making false allegations of patent infringement. Doc. 40, 21. The complaint lacks any details to support this assertion, other than the claim that Defendants sought to enforce an invalid patent. As explained above, however, Globe has not alleged any facts that establish that Defendants' patent was invalid.

### 3. Deceptive Acts

Globe brings its deceptive acts claim under N.Y. Gen. Bus. Law § 349. "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "[T]he gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks and citation omitted). As a result, "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995).

In most cases, courts have refused to apply Section 349 to private disputes. *See New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 771 (N.Y. 1995) (finding that the statute did not cover misrepresentations made by an insurance company to a university); *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14 Civ. 6294 (HBP), 2015 WL 5008762, at *1 (S.D.N.Y. Aug. 24, 2015) (finding that consumer confusion, in itself, did not satisfy the public harm requirement); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223 (S.D.N.Y. 2013) (same); *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013) (finding that the plaintiff had not alleged sufficient public harm because the public harm was not core to plaintiff's claim); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349.").

Here, the "gravamen" of Globe's complaint is its private dispute with Defendants, not consumer injury or harm to the public interest. Of the fifty-three paragraphs in Globe's complaint that establish the factual background, only two refer to the public. Doc. 5, 15. One paragraph claims that Defendants' alleged misrepresentations will limit the availability of CVC products and the other predicts that "consumers . . . will be charged higher prices." *Id.* Neither paragraph alleges that Defendants directed their statements to the public and neither paragraph explains how Defendants' statements would limit supply or raise prices. Most importantly, neither paragraph alleges sufficient public harm.

The claim also lacks merit because Globe has not alleged, for the reasons stated above, that Defendants made material misrepresentations in asserting their patent rights.

## IV. Leave to Amend

Globe requests leave to amend its complaint in the event the Court grants Defendants' motion. Doc. 40, 24. Parties are entitled to amend their pleadings once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). Motions to amend are ultimately within the discretion of the district courts, *Foman*, 371 U.S. at 182, and they should be handled with a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)) (internal quotation marks omitted). Although permissive, the standard for leave to amend "is by no means 'automatic.'" *Billhofer v. Flamel Technologies, S.A.*, No. 07 Civ. 9920, 2012 WL 3079186, at *4 (S.D.N.Y. July 30, 2012) (quoting *Klos v. Haskel*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)).

Leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The party opposing the amendment has the burden of establishing its futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)). Defendants have not argued prejudice, bad faith, or futility. Globe may amend its complaint.

V.     **Conclusion**

For the reasons stated above, Defendants' motion to dismiss is GRANTED without prejudice and Plaintiff may amend its complaint by March 1, 2019. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 37.

It is SO ORDERED.

Dated:  February 8, 2019
        New York, New York

Edgardo Ramos, U.S.D.J.