UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLOBE COTYARN PVT. LTD.,

              Plaintiff,

-against-

NEXT CREATIONS HOLDINGS LLC, and AAVN, INC.,

              Defendants.

**OPINION AND ORDER**

18 Civ. 04208 (ER)

Ramos, D.J.:

       Globe Cotyarn Pvt. Ltd. ("Globe"), a fabric manufacturer, brings this action against a fabric patent holder, AAVN, Inc. ("AAVN"), and its subsidiary, Next Creations Holdings LLC ("Next Creations"), for allegedly falsely telling certain of Globe's potential customers that Globe sold infringing products. Globe alleges claims for violations of Section 43 of the Lanham Act, and tortious interference and unfair competition under New York law. Defendants move to dismiss. The complaint before the Court is Globe's second to be considered by the Court. The Court dismissed Globe's previous complaint with leave to amend. For the reasons set forth below, Defendants' motion is GRANTED.

**I.    Background**

       Globe, an Indian company, manufactures and sells textiles, including bed sheets, to U.S. importers. (Doc. 43 ("SAC") ¶¶ 2, 3.) AAVN, a Texas company, owns the following textile patents: United States Patent No. 9,131,790 B2 ("790 patent"); United States Patent No. 9,481,950 B2 ("950 patent"); United States Patent No. 9,493,892 B1 ("892 patent"); and United States Patent No. 9,708,737 B2 ("737 patent"). (SAC ¶¶ 4, 6-13.) The latter three patents issued from continuation-in-part applications for a patent application that itself was a continuation

application for the application that issued as the 790 patent. (*Id*.) These patents concern the manufacture of Chief Value Cotton ("CVC"), a fabric composed of cotton and polyester yarns. (*Id.* ¶¶ 18-20, 38, 41-42, 47-48, 52-53.) Very generally speaking, these patents describe a process for manufacturing high thread count cotton-polyester blend fabric. (*Id.*; Doc. 53 at 3-4.) Next Creations, a New York company, is a wholly-owned subsidiary of AAVN. (SAC ¶ 5.)

**A.     The Prior Challenges**

On October 1, 2015, AAVN filed a complaint in the International Trade Commission ("ITC") alleging that certain textiles being imported into the U.S. violated claims 1-7 of its 790 patent. (*Id.* ¶ 28-29.) In those proceedings, a respondent, GHCL, defended on the basis that it had sold an allegedly infringing product (the "Grace Home Fashions prior art product") before AAVN had even received the 790 patent. (*Id.* ¶ 31, Ex. C.) The issue was never decided by the ITC in that proceeding because GHCL and AAVN agreed to settle the matter. (*Id.* ¶ 36.) The consent order filed in connection with that settlement noted that GHCL agreed not to sell for importation products that infringe on AAVN's 790 patent. (Doc. 54-5.) Globe alleges that in filing the ITC complaint AAVN had determined that the Grace Home Fashions prior art product practiced claims 1-7 of the 790 patent. (SAC ¶ 31.) Moreover, Globe claims that, by AAVN's own analysis presented to the ITC, the Grace Home Fashions prior art product was also within certain claims of the '737, '892, and '950 patents. (*Id.* ¶¶ 43-55.)

On August 1, 2017, a company, A.Q. Textiles LLC ("AQT"), filed petitions in the United States Patent and Trademark Office to review AAVN's 892 and 950 patents. (*Id.* ¶ 66.) From an opinion by Patent Trial and Appeal Board ("PTAB"), which Globe cites in the SAC and Defendants filed with their moving papers, it appears that AQT challenged these patents on the grounds that they were invalidated by prior art. (Docs. 54-3 at 6-7, 54-4 at 6-7.) It also appears

that AQT specifically identified a number of prior art products. (*Id.*) Globe claims that "[m]any of the grounds included in these petitions included previously sold CVC products that, on information and belief, AAVN had asserted infringed claims of the '790 patent." (SAC ¶ 66.) In January 2018, AQT also filed a petition to review AAVN's 737 patent. (*Id*. ¶ 74.) Before any of the cases went to trial, on February 8, 2019, PTAB issued a decision regarding the 892 and 950 patents, saying that it is "more likely than not that AQT will prevail in showing that at least one of the challenged claims in each of the patents is unpatentable." (SAC at ¶ 67.) None of the three cases were resolved by trial, however, as, on March 23, 2018, the parties notified PTAB that they had settled their claims. (*Id.* ¶ 77.)

**B.     The Instant Charges**

Here, Globe alleges that Defendants contacted a number of Globe's customers and falsely accused Globe of selling infringing materials. Globe identifies three importers, but contends on "information and belief" that Defendants also spoke to the buyers of certain retailers who, in turn, relayed Defendants' message to other importers.

Specifically, Globe alleges that in a letter dated April 10, 2018, John B. Walker, Jr., Next Creations' chief financial officer, wrote the President of J. Queen as follows: "I am reaching out to you today in regard to product your company sells to retailers throughout the United States that infringe upon AAVN's CVC Patent. Your company is not authorized to sell this CVC product." (*Id.* ¶ 102; SAC Ex. D.). In an email sent to a representative of J. Queen three days later, Walker further explained, "One of the infringing products was purchased from Globe Cotton out of India. The product in question is 600TC CVC. I was told by my team that there are other infringement items besides this one." [1] (*Id.*; SAC Ex. E.)

---

[1] According to Globe, "Globe Cotton" actually refers to Globe Cotyarn. (SAC ¶ 102.)

3

Globe further alleges that, also in April 2018, Walker sent a letter, similar to the one he sent J. Queen, to another Globe customer. Globe does not identify this customer by name—it states in its Opposition papers that this "importer customer" asked that it remain "unnamed"— but Globe does allege that this customer has an office and showroom in New York City. (SAC ¶ 121; Doc. 55 at 24.)

In its last allegation about communications to a specific customer, Globe alleges that Arun Agarwal, the named inventor of AAVN's patents and allegedly an owner and officer of AAVN and Next Creations, or persons acting under this control told another importer of bed sheets, Amrapur Overseas Inc. ("Amrapur"), that it should not purchase CVC bed sheets from Globe because the sale of those products in the U.S. would infringe AAVN's patent. (SAC ¶¶ 6, 9, 11, 13, 14, 113, 115.)

Lastly, Globe alleges on "information and belief" that Agarwal told buyers for five retailers that they should not purchase Globe's bed sheets because sale of those bed sheets in the United States would infringe AAVN's patents. (*Id.* ¶ 86.) Globe alleges that these five retailers, along with another, sell the "vast majority of CVC bed sheets" in the United States. (*Id.* ¶ 83.) Globe alleges that these buyers, in turn, informed importers of CVC bed sheets what Defendants had told them. (*Id.* ¶ 87.) According to Globe, "[o]ver half of the 15 to 25 companies who import CVC bed sheets into the United States for sale" sell or have sold CVC bed sheets to the five stores the buyers represent.[2] (*Id.* ¶ 88.)

---

[2] The SAC also appears to allege, again on "information and belief," that Agarwal or persons acting at his direction told at least half the importers not to purchase Globe's bed sheets because they would infringe AAVN's patents. (SAC ¶ 89.) Globe, however, does not cite this allegation in its Opposition papers and instead seems to imply that these importers (other than J Queen New York, Amrapur, and the unnamed New York importer) received the information from Globe through the buyers. (Doc. 55 at 21-22.)

4

## II. Standard

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## III. Discussion

Defendants argue that Globe has failed to plead (1) that Defendants engaged in commercial advertising or promotion, necessary to establish its Lanham Act claim; (2) bath faith, necessary for all of Globe's claims; (3) the necessary elements of a tortious interference claim; and (4) a viable theory to support an unfair competition claim.  The Court addresses each argument in turn.

5

A.      **Section 43(a)(1)(B) Lanham Act Unfair Competition**

Globe claims that Defendants, by describing Globe's product as infringing in its communications with certain of Globe's customers or potential customers, made literally false advertisements in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). This section of the Lanham Act prohibits any person from "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).

To successfully bring a claim under this provision of the Lanham Act, a party must first demonstrate that the challenged message qualifies as "commercial advertising or promotion." Commercial advertising or promotion is (1) commercial speech, as defined by the First Amendment, (2) made "for the purpose of influencing consumers to buy defendant's goods or services;" and (3) "disseminated sufficiently to the relevant purchasing public." *Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (internal quotation marks and citations omitted).[3]

Defendants claim that Section 43(a)(1)(B) does not apply to the challenged messages because the messages do not qualify as commercial advertising or promotion, an argument with which the Court agreed in its order dismissing the previous complaint. Specifically, they argue that Globe has not shown that the messages were sufficiently disseminated to the relevant

---

[3] Despite an invitation in the Court's last order to address choice of law (Doc. 42 at 5 n.4), neither parties' briefing helps the Court resolve the issue. Both parties however, predominantly cite Federal Circuit law on the question of bad faith (relevant to both the Lanham Act and state law tort claims), discussed below, but Second Circuit law with regards to the bulk of the Lanham Act claim. This approach is in line with the practice of Courts in this district to follow "Second Circuit, rather than Federal Circuit, law as to the Lanham Act claim[s], but [to] include[] the Federal Circuit's rule that a Lanham Act Section 43 plaintiff alleging improper suggestions to the market of infringement of a patent must allege the patentee's bad faith." *GEA Westfalia Separator, Inc. v. Greenshift Corp.*, No. 09 Civ. 7686 (LMM), 2010 WL 2076951, at *3 n.2 (S.D.N.Y. May 17, 2010) (internal citations omitted.). In any event, the Federal Circuit applies "the law of the regional circuit on non-patent issues." *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1304 (Fed. Cir. 2009); *see also Spotless Enters. v. Carlisle Plastics, Inc.*, 56 F.Supp.2d 274, 277 (E.D.N.Y.1999) (noting that under Federal Circuit precedent "claims of unfair competition are governed by the law of the regional circuit in which the district court sits" and therefore "the law of the Second Circuit governs" plaintiff's Lanham Act claim.)

purchasing public. While Globe has improved its complaint somewhat, the Court finds that its claims of dissemination are still lacking.

The Second Circuit has noted that although the Lanham Act's use of the terms "commercial advertising and promotion" refer to "more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). Because the terms "connote[] activity designed to disseminate information to the public. . . the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id*. "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Id*. Therefore, a business "harmed by isolated disparaging statements do[es] not have redress under the Lanham Act" and should instead "seek redress under state-law causes of action." *Id.*

The Second Circuit has not established the exact number or percentage of customers that must be exposed to the challenged message for the message to qualify as sufficiently disseminated. It has, however, provided some guidance. In *Fashion Boutique*, for example, it observed that defendant's sales associates made, in defendant's store, "a total of twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers" and held that "[s]uch evidence is insufficient to satisfy the requirement that representations be disseminated widely in order to constitute 'commercial advertising or promotion' under the Lanham Act." 314 F.3d at 58. Courts in the District have therefore dismissed Section 43 Lanham Act claims in cases where the allegedly false or misleading statements were made to few entities. In *Professional Sound Servs., Inc. v. Guzzi*, the court held, "Dissemination of a

7

statement to one customer out of 36 simply does not meet [the necessary] standard." 349 F. Supp. 2d 722, 729 (S.D.N.Y. 2004).  Similarly, in *Chamilia, LLC v. Pandora Jewelry*, the court held "six statements, most directed at a single individual," were not sufficiently disseminated to qualify as commercial advertising or promotion, "[e]ven if the relevant market, jewelry retailers, is in fact . . . smaller than that for the handbags in *Fashion Boutique*."  No. 04 Civ. 6017 (KMK), 2007 WL 2781246, at *9 (S.D.N.Y. Sept. 24, 2007).  And, in *In re Elysium Health-Chromadex Litig.*, the court held that "one email between a company representative and a single consumer does not constitute 'advertising and promotion' within the meaning of the Lanham Act."  No. 17 Civ. 7394 (CM), 2018 WL 4907590, at *9 (S.D.N.Y. Sept. 27, 2018).  *See also Solmetex, LLC v. Dental Recycling of N. Am., Inc.*, No. 17 Civ. 860 (JSR), 2017 WL 2840282, at *3 (S.D.N.Y. June 26, 2017) (finding that the allegation that a company's representative made a single statement to a single customer did "not support the inference that [the company] conducted a wide-reaching false advertising campaign disseminated to the wider purchasing public").

Turning to the allegations here, the Court finds that they insufficiently allege that Defendants' actions "were part of an organized campaign to penetrate the market."

Globe alleges specific communications to three importers.  First, Next Creations' CFO, John B. Walker, Jr., allegedly sent J. Queen a letter on April 10, 2018 saying that J. Queen sold products that infringed on AAVN's patents.  After a phone call during which J. Queen asked Walker to identify the product, Walker sent J. Queen an email on April 13, 2018 "[o]ne of the infringing products was purchased from Globe Cotton out of India. . . . I was told by my team that there are other infringement items besides this one."  (SAC at 102, SAC Exs. D, E.)  Second, that same month, Walker allegedly sent a similar letter to another Globe customer.  And, third, in January 2019, Agarwal "or persons acting under his direction and control and acting on behalf of

AAVN" told Amrapur that it would be infringing AAVN's patents by selling bed sheets made by Globe in the United States. Globe also alleges on "information and belief" that Agarwal told buyers for five retailers that they should not purchase bed sheets Globe made and that, as a result of these statements, these buyers informed various importers not to buy Globe's products. (SAC ¶¶ 86-87.) Globe alleges that "[o]ver half of the 15 to 25 companies who import CVC bed sheets into the United States for sale" sell or have sold CVC bed sheets to these five stores. (*Id.* ¶ 88.)

Plaintiffs are permitted to plead facts "on information and belief," particularly where "facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.2010) (citing *Iqbal*, 556 U.S. at 667). "[S]uch allegations, however, must be accompanied by a statement of the facts upon which the belief is founded." *JBCHoldinqs NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (internal citations and quotation marks omitted). The SAC does not include such a statement, and the Court declines to consider the allegations made upon information and belief. These statements, relating to communications to buyers, unlike those not made on information and belief, which were allegedly made to importers, do not appear to be based on more than "conjecture and speculation." *Pakter*, 931 F. Supp. 2d at 527.

Globe is left, therefore, with the communications to three of the "15 to 25" importers. These statements, apparently made in private over a 10-month period, do not reasonably suggest "the contested representations [were] part of an organized campaign to penetrate the relevant market." *See Fashion Boutique,* 314 F.3d at 57; *see also Sports Unlimited., Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004–05 (10th Cir. 2002) (dissemination of information to between two and seven customers, where plaintiff made up to 150 bids per year, was insufficient)).

Rather, they appear to be isolated events, for which Globe should seek redress under state law, rather than the Lanham Act.

In defense of its claims, Globe cites only to an out-of-circuit case, *The Hillman Grp., Inc. v. Minute Key Inc.*, 317 F. Supp. 3d 961, 979 (S.D. Ohio 2018) for the proposition that a Lanham Act claim can still survive where false and misleading statements are made to few customers where the size of the market at issue is "small and discreet." (Doc. 55 at 22.) It is instructive, however, what Globe leaves out of its quotation of *Minute Key*. There, the court upheld a Lanham claim where the market was "*very* small and discreet." *Minute Key Inc.*, 317 F. Supp. 3d at 979 (emphasis added). The statements at issue were made to one store that housed "virtually every [of plaintiff's products] ever built." *Id.* That is far from the allegations here. The three importers are not alleged to represent an outsized share of the relevant market.

Because Globe has failed to adequately allege that Defendants engaged in commercial advertising or promotion, the Court dismisses Globe's Lanham Act claim.

**B.     Bad Faith**

Both Globe's Lanham Act and state law claims require a showing that Defendants' statements about Globe's alleged infringement of the AAVN patents were made in bad faith. The Federal Circuit—which both parties cite as the authority on this issue—has held that Federal patent law preempts state tort law liability with regards to a patentholder's communications asserting infringement of its patents, unless the patent holder acts in bad faith. *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998) ("Federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith.") (overruled on other grounds).

10

Bad faith is determined on a "case by case basis," but the Federal Circuit has held that if a patentholder knows that its "patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999). Generally, to demonstrate bad faith under Federal Court precedent, a plaintiff must prove both objective and subjective elements.  First, the plaintiff must show objective baselessness, "meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008) (citing *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007)). Second, a plaintiff must show subjective bad faith—that the "lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known." *Kilopass Tech., Inc. v. Sidense Corp.,* 738 F.3d 1302, 1310 (Fed. Cir. 2013) (internal quotation marks omitted).

Defendants argue that Globe has failed to establish objective bad faith.  Globe's factual claims have changed only moderately since the last round of briefing—they fare no better.

Globe argues, in essence, that Defendants' infringement claims were objectively baseless because Defendants' patents were invalidated by prior art and no patent holder could reasonably expect to prevail on an infringement claim regarding a patent invalidated by prior art. Specifically, Globe refers to the ITC proceeding AAVN initiated alleging that certain products infringed claims 1-7 of the 790 patent.  Globe alleges that, in January 2016, GHCL, one of the respondents in the ITC proceeding, filed a document showing that an allegedly infringing product, the Grace Home Fashions prior art product, was on sale for more than a year before the filing of the 790 patent.  (SAC ¶¶ 31, 81.)  In filing the case, AAVN had previously determined that this product infringed claims 1-7 of the 790 patent.  Moreover, Globe claims that, according

11

to AAVN's own analysis presented to the ITC, the Grace Home Fashions prior art product was within certain claims of the 737, 892, and 950 patents. (*Id.* ¶¶ 43-55.) The implication it seems Globe seeks to draw from these facts is that having done analysis to show that the Grace Home Fashions product practiced its patents, Defendants now knew that these patents were invalidated by prior art.

Globe contends that there is further prior art that invalidates AAVN's patents. Globe alleges that after AAVN applied for the continuation patents, AQT, on August 1, 2017, filed a petition for review of the 950 and 892 patents asking that PTAB rule that the claims of both patents were not patentable because of prior art.[4] (SAC ¶ 66.) Globe claims that many of the grounds included in these petitions "included previously sold CVC products that . . . AAVN had asserted infringed claims of the '790 patent." (*Id.*) On February 8, 2019, PTAB issued a decision, which Defendants submit along with their moving papers, saying that it is "more likely than not that AQT will prevail in showing that at least one of the challenged claims in each of the patents is unpatentable." (SAC at ¶ 67.) That decision identified several products that AQT contended invalidated the 950 and '892 patents. (Doc. 54-3 at 6-7, 54-4 at 6-7.)

The claims fail in the Court's eyes because the SAC does not sufficiently allege that all claims of the AAVN patents were invalidated by prior art. This matters because Defendants' statements that Globe products infringed its patents could not have been made in bad faith if only some portion of its patents were invalid.

As an example, the SAC nowhere alleges that claims 11-19 of the 790 patent are invalidated by prior art. Globe disputes this by pointing to paragraphs 27 and 32 of the SAC, but the Court finds neither sufficiently persuasive. Paragraph 27—which states "The '790 patent is

---

[4] AQT allegedly later filed a challenge to the 737 patent.

12

invalid for failure to meet the requirements of the Patent Act, including but not limited to 35 U.S.C. § 102(a)—is simply a legal conclusion.  *Iqbal*, 556 U.S. at 129 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").  Paragraph 32 does not provide the necessary factual support either.  That paragraph states that "Defendants thus had personal knowledge from the ITC proceedings that products AAVN has asserted infringed the claims of the '790 patent are prior art products that render the claims of the '790 patent invalid."  But the "thus" in that paragraph appears to refer to AAVN's prior analysis that the products made by GHCL "met all of the requirements of *claims 1-7*," not claims 11-17.  (SAC ¶ 31.)  As a last salvo, Globe argues that there are only minor differences between claims 1 and 11 of the '790 patent, and includes a lengthy chart attempting to show the similarities.  This argument, however, is not supported by the facts actually alleged in the SAC, and, in any event only concerns claim 11.  It says nothing about claims 12-19.

Most of the facts discussed above were alleged in the previous complaint dismissed by the Court.  Most of the allegations new to the SAC concern information that Globe alleges should have been, but was not, disclosed to the USPTO when it considered the applications for the 950, 892, and 737 patents.  Globe argues that this failure means that Defendants cannot rely on the presumption of validity that attached to patents.  The Court need not decide if Globe is correct, however, because Defendants do not need to rely on the presumption to prevail on this motion.

C.      **Tortious Interference**

Under New York law, a plaintiff alleging tortious interference with a business relation must show:  "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used

13

dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000)

Defendants claim that, in addition to its failure to plead bad faith, Globe's tortious interference claim fails because Globe has not adequately pleaded the third prong of a tortious interference claim—that Defendants had a wrongful purpose or used dishonest, unfair, or wrongful means.

"Wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214–15 (2d Cir. 2002). And, Globe contends Defendants statements were false and misleading. As discussed above, however, Globe has not sufficiently alleged that Defendants statements were false or misleading.

### D.     Unfair Competition

Defendants argue that Globe's unfair competition should be dismissed because, in addition to its failure to plead bad faith, the SAC does not allege either "palming off" or "misappropriation," the only cognizable unfair competition claims that Defendants contend are viable under New York law. Because the Court finds that the SAC fails to allege bad faith, it does not decide this issue.

### IV.    Leave to Amend

The remaining question is whether Globe should be granted leave to amend its claims. When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a) (2). But, it is "within the sound discretion of the district court to grant or to deny leave to amend." *McCarthy v. Dun & Bradstret Corp.*, 482 F. 3d 184, 200 (2d Cir. 2007). A court may dismiss without leave to amend when amendment

would be "futile," or would not survive a motion to dismiss. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011).

Defendants argue that Globe has had multiple attempts to plead a viable theory and that it is now clear that no claim can be made on the facts here. The Court shares this belief. Globe's request to amend the SAC is made without argument and does not identify what additional facts it could allege that might be sufficient to survive a motion to dismiss. *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d. Cir. 2004) (affirming dismissal without leave to amend where plaintiff offered only "conclusory assertions" that amendment would cure a complaint's deficiencies and "failed to disclose what additional allegations they would make which might lead to a different result"); *Arnold v. KPMG LLP*, 334 F. App'x 349, 352–53 (2d Cir. 2009) (affirming trial court's dismissal without leave to amend where plaintiff "failed to identify those facts that would save his complaint, should he be granted leave to amend, with sufficient specificity"). Accordingly, the Court declines to grant Globe's request to file an amended complaint.

**V.   Conclusion**

For the reasons stated above, Defendants' motion to dismiss is GRANTED

The Clerk of the Court is respectfully directed to terminate the motion at Doc. 52 and to close the case.

It is SO ORDERED.

Dated:   August 10, 2020
         New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Edgardo Ramos, U.S.D.J.